## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 13 2018, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Michael P. Quirk
Muncie, Indiana

ATTORNEY FOR APPELLEE

J. Dustin Smith
Manley Deas Kochalski LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James G. Lindzy and Steven Kreps,

*Appellants-Defendants,*

*v.*

Bayview Loan Servicing,

*Appellee-Plaintiff.*

December 13, 2018

Court of Appeals Case No.
18A-MF-1045

Appeal from the Delaware Circuit Court

The Hon. Marianne Vorhees, Judge

Trial Court Cause No.
18C01-1211-MF-105

**Bradford, Judge.**

# Case Summary

James Lindzy and his agent Steven Kreps (collectively, "Lindzy") appeal from the trial court's judgment allowing Bayview Loan Servicing to foreclose its interest in a residence owned by Lindzy ("the Property"). In 1999, Lindzy purchased a residence with money borrowed from Bayview's predecessor-in-interest and executed a promissory note ("the Note") and mortgage ("the Mortgage") in its favor. In 2005, Bayview's predecessor filed suit to foreclose for nonpayment on the Note. After negotiations, the parties entered into a loan modification agreement ("the Agreement"), pursuant to which Lindzy would make larger payments against his obligation and, in exchange, the foreclosure action would be dismissed. Lindzy made one payment pursuant to the Agreement before stopping, and a second foreclosure suit was filed. After a bench trial, the trial court entered judgment against Lindzy. Lindzy contends that (1) there was insufficient evidence to establish that there was a meeting of minds between the parties as to the Agreement, (2) there is insufficient evidence to establish that the Agreement was supported by consideration, and (3) the Agreement was unconscionable and therefore unenforceable. Because we disagree with Lindzy's first two contentions and conclude that the third is waived, we affirm.

# Facts and Procedural History

On January 4, 1999, Lindzy executed the Note (in the principal amount of $88,635.00) and the Mortgage in favor of Bayview's predecessor-in-interest,

granting it a security interest in the Property, a residence located in Muncie. The first foreclosure action concerning the Property was filed on July 28, 2005 ("First Foreclosure"). Lindzy was represented by attorney B. Joseph Davis at the time. The parties negotiated the Agreement, and, on December 29, 2009, Lindzy met with Davis's assistant and signed it. Pursuant to the terms of the Agreement, the new principal balance was $129,117.95, against which Lindzy was to make monthly payments of $1111.20 beginning in February of 2010. On January 26, 2010, the parties agreed to dismiss the First Foreclosure, noting in the stipulation of dismissal that the parties had entered into the Agreement.

[3] Lindzy made at least one payment pursuant to the Agreement but eventually stopped making payments. On October 6, 2010, a second complaint to foreclose on the Mortgage was filed. A bench trial was held on November 21 and 22, 2017, after which the trial court entered judgment in favor of Bayview.

# Discussion and Decision

[4] Lindzy argues that the trial court erred in concluding that the Agreement was binding because there was allegedly no meeting of the minds on all essential elements and no proof of consideration. Lindzy also argues that the Agreement, even if binding, is unconscionable and therefore unenforceable.

## I. Whether Sufficient Evidence Supports the Trial Court's Judgment

[5] "When reviewing judgments with findings of fact and conclusions of law, Indiana's appellate courts 'shall not set aside the findings or judgment unless

clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (citing Ind. Trial Rule 52(A)). "A judgment will be clearly erroneous when there is 'no evidence supporting the findings or the findings fail to support the judgment,' and when the trial court applies the wrong legal standard to properly found facts.'" *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005) (internal citations omitted). "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." *Id.* (citing *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)). "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best*, 941 N.E.2d at 502.

## A. Meeting of the Minds

[6]     Lindzy argues that there was no meeting of the minds because he did not know what he was signing when he signed the Agreement. "A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) (citing *Wallem v. CLS Indus.*, 725 N.E.2d 880, 883 (Ind. Ct. App. 2000)). "The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it." *Id.* (citing *Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 277 (Ind. Ct. App. 2001)). "A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct. The intention of the parties to a contract is a

factual matter to be determined from all the circumstances." *Id.* (citations omitted).

[7] The record amply supports a conclusion that there was a meeting of the minds. First and foremost, Lindzy signed the Agreement, and there can be little doubt that a signed contract is compelling evidence of the intent to be bound. *See, e.g.*, *Stardust Ventures, LLC v. Roberts*, 65 N.E.3d 1122, 1127 (Ind. Ct. App. 2016) ("The signature of Stardust's president is sufficient to manifest Stardust's intent to be bound by the agreement."). Moreover, it is not disputed that the parties negotiated and agreed upon the terms of the Agreement, Davis had authority to negotiate on Lindzy's behalf as his attorney, and Bayview's predecessor reasonably relied on this authority in entering into the Agreement. Finally, Lindzy made at least one payment pursuant to the Agreement before stopping, which, in our view, amounts to a further acknowledgment of being bound by it.

[8] Although Lindzy testified that he did not know what he was signing and that his subjective intent was to continue paying on the Note, the trial court was under no obligation to credit such testimony and did not. Moreover, to the extent that Lindzy suggests that he was somehow defrauded and produced evidence purporting to establish this, the trial court specifically found that "Defendants have not carried their burden to show that someone or some entity committed fraud. Defendants never provided clear evidence as to who defrauded them and exactly what constituted the fraudulent acts." Appellant's App. Vol. II p. 107. Lindzy's argument amounts to nothing more than an

invitation to reweigh the evidence, which we will not do.  *See Best*, 941 N.E.2d at 502.

## B.  Consideration

[9]     Lindzy also contends that he received no consideration from Bayview's predecessor in exchange for executing the Agreement.  "Consideration is a 'bargained for exchange' whereby the promisor accrues a benefit or the promisee accepts a detriment."  *Kelly v. Levandosky*, 825 N.E.2d 850, 860 (Ind. Ct. App. 2005) (citing *DiMizio v. Romo,* 756 N.E.2d 1018, 1022–23 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied*.  "A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled."  *Id*. at 1023.  "A detriment, on the other hand, is a legal right the promisee has forborne."  *Id*.  To come straight to the point, the record supports a finding that Bayview's predecessor forewent its right to pursue the First Foreclosure when it entered into the Agreement, which is adequate consideration.  *See, e.g.*, *id*. (concluding that consideration for loan modification agreement existed where creditor agreed to forgo the right to enforce original loan agreement).

# II.  Whether the Agreement is Unconscionable

[10]    Lindzy claims for the first time on appeal that the Agreement is unconscionable and therefore unenforceable.  However, "[i]t is well-settled that 'a party may not raise a new argument for the first time on appeal.'"  *Evans v. Thomas*, 976 N.E.2d 125, 128 (Ind. Ct. App. 2012) (quoting *Art Country Squire, L.L.C. v. Inland Mortg. Corp.*, 745 N.E.2d 885, 892 n.3 (Ind. Ct. App. 2001)), *trans. denied*.

Because Lindzy did not raise this issue in the trial court, it is waived for appellate review. In summary, we find all of Lindzy's claims to either be without merit or waived for our review.

[11] The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.