

**FILED**

Mar 27 2017, 6:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Maria Matters
Maria Matters Attorney at Law LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jeffery Marc Leeper
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark H. Miller, II,<br>*Appellant-Respondent,*<br><br>v.<br><br>Leigh Anne Miller,<br>*Appellee-Petitioner* | March 27, 2017<br><br>Court of Appeals Case No.<br>49A02-1604-DR-817<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Patrick J. Dietrick,<br>Judge<br><br>The Honorable Caryl Dill,<br>Magistrate<br><br>Trial Court Cause No.<br>49D12-1409-DR-29640 |

**Crone, Judge.**

## Case Summary

[1] Mark H. Miller, II ("Father"), appeals the decree dissolving his marriage to

Leigh Anne Miller ("Mother"). He contends that the trial court clearly erred in

finding that he is voluntarily underemployed, given that his decision to enroll as

a part-time college student and forgo full-time employment was made with Mother's agreement during the marriage. He also argues that the trial court erred in imputing income to him where there was no evidence on two of the four factors required to determine imputed income.

[2] We conclude that the trial court did not clearly err in finding that Father is voluntarily underemployed where he was simultaneously the children's primary caregiver and a part-time college student during the marriage, but he is now no longer the children's primary caregiver. However, we conclude that the trial court determined Father's imputed income without evidence of prevailing job opportunities and earnings levels in the community, and therefore a hearing is necessary for the trial court to hear evidence on these factors. Accordingly, we affirm in part, reverse in part, and remand.

## Facts and Procedural History[1]

[3] Father and Mother were married in 1999. They had four children, born between 2004 and 2011. After the first child was born, Mother stopped working and was the primary caregiver of the children until December 2009, when she obtained full-time employment. In April 2010, Father lost his job as an insurance agent, earning a base salary of $36,000 per year plus commissions. Tr. at 20. Thereafter, Father became the primary caregiver of the children.

---

[1] Father's appellant's appendix includes copies of exhibits and portions of the transcript in contravention of Indiana Appellate Rule 50(F). It also needlessly includes motions and orders filed in the Court of Appeals. *See* Ind. Appellate Rule 50(A)(2) (specifying contents of appellant's appendix).

Father did laundry and grocery shopping, cooked all the meals, took the children to school and the doctor, and helped them with their homework. Father and Mother decided that Father should go to college. In the fall of 2010, Father enrolled as a part-time student at IUPUI to pursue a mechanical engineering degree.

[4] In the spring of 2014, Father moved out of the marital residence. In September 2014, Mother filed a petition for dissolution. At the time of the final hearing, Father was going to college part time (taking eleven credit hours), working fifteen hours a week at his father's cleaning business, and living with and sharing expenses with his girlfriend. *Id.* at 11, 16, 22.

[5] Following a hearing, in February 2016, the trial court issued the dissolution decree, which provides in relevant part as follows:

> 8. Father lost his job in April 2010. He has been voluntarily unemployed or underemployed since. The parties agreed that he would go to school beginning in the fall of 2010. He has been pursuing an Engineering De[g]ree at IUPUI. However, he is not enrolled as a full time student.
>
> ….
>
> 20. Father testified his income is $250 per week for 15 hours per week working for his father. He imputed minimum wage of $290 for child support purposes. The Court has already determined that he is underemployed.
>
> ….

23. The Court finds it is reasonable to impute income to Father at the rate of $600.00 per week based on his prior earning level at Farm Bureau [Insurance] and the fact that he is voluntarily under employed. The court did not consider imputing income from any other source of prior employment. There is no evidence that any of Father's prior business concerns are operational or generating income.

….

57. Here the parties mutually decided, well prior to the filing of dissolution, that Father would attend school and Mother would be the primary breadwinner. However, according to Father's testimony, he contributed substantially toward the support and maintenance of the children and the household by applying the proceeds of his student loans to those expenses.

58. Per the [Indiana Child Support] Guidelines, potential income shall be determined using employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. Child Supp. G. 3(A)(3).

59. It is proper to impute income to Father at his prior earning level since he is no longer the stay at home parent.

….

65. Although there is presently a disparity in the parties' earning levels, Father has a prior work history and the ability to earn an income comparable to that of Mother even without his degree. He is not attending school full time and has the ability to obtain full time employment.

....

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** ....

....

Father is ordered to pay child support in the amount of $97.00 per week plus $23.00 per week on the accrued arrearage of $6,111.00 by income withholding until paid in full. In addition, he is ordered to pay $500.00 toward the arrearage from his tax refund each year.

Appellant's App. at 21-31.

[6] Father filed a motion to correct, which the trial court denied.[2] This appeal ensued.

# Discussion and Decision

[7] Father challenges the trial court's finding that he is voluntarily underemployed and its decision to impute potential income to him based on his former salary as a full-time insurance agent. Initially, we note that the trial court entered findings of fact and conclusions thereon sua sponte.

Sua sponte findings only control issues that they cover, while a general judgment standard applies to issues upon which there are no findings. We may affirm a general judgment with findings on any legal theory supported by the evidence. As for any findings

---

[2] The motion and order are not included in the record on appeal.

that have been made, they will be set aside only if they are clearly erroneous. A finding is clearly erroneous if there are no facts in the record to support it, either directly or by inference.

*Eisenhut v. Eisenhut*, 994 N.E.2d 274, 276 (Ind. Ct. App. 2013) (citations omitted).  Also, because we are dealing with family law matters, our review is conducted with "'a preference for granting latitude and deference to our trial judges.'"  *Kicken v. Kicken*, 798 N.E.2d 529, 532 (Ind. Ct. App. 2003) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)).  We will reverse a trial court's decision regarding a parent's unemployment or underemployment and imputation of potential income only for an abuse of discretion.  *In re Paternity of Pickett*, 44 N.E.3d 756, 762 (Ind. Ct. App. 2015).

## Section 1 – The trial court did not clearly err in finding that Father is voluntarily underemployed.

[8]     The Indiana Child Support Guidelines ("the Guidelines") provide,

> If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income.  A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.

Ind. Child Support Guideline 3(A)(3).  "Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable of earning more."  *Id*. cmt 2c. "But the Guidelines do not require or encourage parents to make career decisions based strictly upon the

size of potential paychecks, nor do the Guidelines require that parents work to their full economic potential." *Sandlin v. Sandlin*, 972 N.E.2d 371, 375 (Ind. Ct. App. 2012). "Obviously, a great deal of discretion will have to be used in this determination." Ind. Child Support Guideline 3(A)(3), cmt 2c.

[9] Father first asserts that the trial court's finding that he is voluntarily underemployed is clearly erroneous because he has a legitimate reason for working less than full time and Mother "presented no evidence that [he] consciously reduced his income in order to avoid child support." Appellant's Br. at 6. He cites *Trabucco v. Trabucco*, 944 N.E.2d 544 (Ind. Ct. App. 2011), for the notion that "[w]here a parent is unemployed or underemployed for a legitimate purpose other than avoiding child support, there are no grounds for imputing potential income." *Id.* at 550. However, in *Pickett*, we concluded that the *Trabucco* statement was overbroad and unsupported by the Guidelines, and we rejected the notion that income may be imputed only if the trial court finds that a parent has purposely reduced his or her income to avoid child support. 44 N.E.3d at 766. We explained as follows:

> One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support. [Ind. Child Support Guideline 3(A)(3), cmt 2c.] On some occasions, this Court has rephrased this principle as follows, "A trial court has wide discretion with regard to imputing income to ensure the child support obligor does not evade his or her support obligation." *Miller v. Sugden*, 849 N.E.2d 758, 761 (Ind. Ct. App. 2006), *trans. denied*; *see also Kondamuri v. Kondamuri*, 852 N.E.2d 939, 950 (Ind. Ct. App. 2006) ("The trial court has discretion to impute potential income to a parent if it is

convinced the parent's underemployment 'has been contrived for the sole purpose of evading support obligations.'") (quoting *In re Marriage of Turner v. Turner*, 785 N.E.2d 259, 265 (Ind. Ct. App. 2003)); *Apter v. Ross*, 781 N.E.2d 744, 761 (Ind. Ct. App. 2003) ("With regards to imputing income, the trial court enjoys wide discretion to ensure the child support obligor does not evade his support obligation."), *trans. denied*.[3] We caution that this rephrasing should not be interpreted to mean that potential income may not be imputed unless the court finds that the parent is avoiding the payment of significant child support. While the Guidelines clearly indicate that a parent's avoidance of child support is grounds for imputing potential income, it is not a necessary prerequisite. For example, the relevant commentary states, "When a parent is unemployed by reason of involuntary layoff or job termination, it still may be appropriate to include an amount in gross income representing that parent's potential income." Ind. Child Support Guideline 3(A)(3), cmt 2c(4). Thus, it is within the trial court's discretion to impute potential income even under circumstances where avoiding child support is not the reason for a parent's unemployment.

*Id.*[4]

---

[3] The case cited by Father contains nearly identical language: "[T]he Guidelines give the trial court wide discretion to impute potential income to a parent when the court is convinced that the parent's unemployment or underemployment has been contrived for the sole purpose of evading support obligations." *Homsher v. Homsher*, 678 N.E.2d 1159, 1164 (Ind. Ct. App. 1997) (citing *Gilpin v. Gilpin*, 664 N.E.2d 766, 767-68 (Ind. Ct. App. 1996)).

[4] Father also contends that "'the concept of "voluntary unemployment or underemployment" as used in the Guidelines requires *both* the ability to earn more income and the conscious choice on the part of a parent to reduce income.'" Appellant's Br. at 5-6 (quoting *Lambert v. Lambert*, 861 N.E.2d 1176, 1180 (Ind. 2007)). However, the *Lambert* court addressed whether potential income was properly imputed to an incarcerated parent and was referring to a particular example in the commentary to the Guidelines. 861 N.E.2d at 1180. In any event, there is no dispute that Father consciously decided to enroll in college and suspend full-time employment and therefore consciously decided to reduce his income.

[10] Father further argues that the trial court's finding that he is underemployed is clearly erroneous because his financial circumstances have not changed since the fall of 2010 when he enrolled in college. He relies on *Scoleri v. Scoleri*, 766 N.E.2d 1211 (Ind. Ct. App. 2002), for the proposition that "[t]here is no basis for determining that a parent is underemployed when the level of his or her earnings has remained relatively constant for a number of years." *Id*. at 1219 (citing *Matter of Paternity of Buehler*, 576 N.E.2d 1354 (Ind. Ct. App. 1991)); *see also Apter*, 781 N.E.2d at 764 (using same language); *Carmichael v. Siegel*, 754 N.E.2d 619, 626 (Ind. Ct. App. 2001) (same). In our view, the *Scoleri* court oversimplified *Buehler*. In *Buehler*, this Court concluded that the trial court erred in finding that the father was underemployed and imputing income to him where he had operated his own photography studio since he graduated from college and had been in the photography business throughout his ten-year relationship with the mother. 576 N.E.2d at 1355. Specifically, the *Buehler* court stated,

> It is not our function here to approve or disapprove of the lifestyle of these parties or their career choices and the means by which they choose to discharge their obligations in general. It is clear from the record that during a relationship which endured for about ten years and resulted in the birth of the child in question the father did [make a lifestyle and career choice] and earned relatively the same as at the time of trial. There was no basis therefore for a determination that he was underemployed for the purpose of determining his support obligation.

*Id*. Thus, it was not simply that the father's income level remained relatively constant for several years; he made his lifestyle and career choice before or

shortly after he began his relationship with the mother and worked in that profession throughout the relationship.

[11]   Here, the trial court found, and Father does not dispute, that when Father started college as a part-time student in the fall of 2010, he also became the children's primary caretaker. At the time of the final hearing, he was still a part-time student, but he is no longer the children's primary caretaker. A reasonable inference can be drawn that the time Father spent in his caretaking function is now available for other purposes, yet he is working only fifteen hours a week. We conclude that the trial court did not clearly err in finding that Father is voluntarily underemployed for purposes of child support and therefore we affirm that portion of the dissolution decree.

## Section 2 – The trial court determined Father's imputed income without evidence of prevailing job opportunities and earnings levels in the community.

[12]   Father contends that the trial court clearly erred in imputing income to him of $600 per week. As previously noted, "A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community." Ind. Child Support Guideline 3(A)(3). Here, in determining Father's potential income, the trial court properly considered Father's work history and occupational qualifications. However, Father contends that there is no evidence in the record regarding prevailing job opportunities and earnings levels in the

community. In her appellee's brief, Mother asserts that the trial court properly considered Father's work history and abilities but fails to cite evidence in the record regarding prevailing job opportunities and earnings levels in the community. Accordingly, we reverse the portion of the trial court's order imputing $600 per week to Father and remand for an evidentiary hearing on these two factors. If, after hearing evidence on all four factors, the trial court determines that a revision of Father's imputed income is proper, the trial court may exercise its discretion to reevaluate and adjust other determinations regarding child support in the dissolution decree.

[13] Affirmed in part, reversed in part, and remanded.

Riley, J., and Altice, J., concur.